39  157
49a 544

IRWIN Z. SMITH, Respondent, *v.* BERNARD HEIDECKER, GARN-
ISHEE OF MISSOURI SPINNING COMPANY, Appellant.

1. *Corporation — Attachment — Garnishment.*—A subscriber to the stock of a corporation who has accepted the charter and assisted in putting it in operation cannot show, as a defence to a suit by the company, that the charter was obtained by fraud.
2. *Attachment — Garnishment — Practice — Evidence.* — It devolves upon the plaintiff to show affirmatively why the garnishee should be charged; but under the act R. C. 1855, p. 528, § 69, the answer of the garnishee can have no greater effect as evidence than the answer to an ordinary petition.

*Appeal from St. Louis Circuit Court.*

This suit was instituted by plaintiff as trustee of Francis Saler, endorser of Ruegg, Bosse & Co., owners of the Phœnix Cotton Factory. Plaintiff having obtained judgment against the company, and execution having been returned *nulla bona,* issued an alias execution, under which he garnished defendant as a subscriber for four shares of $50 each.

The defence was that the subscription was obtained by fraudulent representations. Ruegg, Bosse & Co. were the owners of the Phœnix Cotton Factory, but, unable to pay their debts, conceived the plan of an incorporation, and hence obtained the charter of the Missouri Spinning Company. This proof was offered by the defendant, but excluded by the court.

By the 2d section (Sess. Acts 1859, p. 295) the company could be organized whenever $50,000 was subscribed, and for which books were to be opened. No formal books were opened, but subscription lists were handed round by Bosse and Blattau, two members of the firm of Ruegg, Bosse & Co.; but the requisite sum of $50,000 was not obtained, and on the day of the organization men of straw were persuaded by Ruegg, Bosse & Co. to take stock so as to complete the

11—VOL. XXXIX.

sum, Ruegg, Bosse &.Co. promising to shield them. Imme-
diately on the organization Ruegg, Bosse and Blattau elected
themselves to three out of five of the seats of the directory,
and at once purchased from themselves, for the corporation,
the Phœnix Cotton Factory for $109,000. The following win-
ter an amendatory charter was passed increasing the direct-
ory to twelve, who were elected, and among them Heidecker.
The appraisement was reduced from $109,000 to $77,000 ;
this last sum was to be returned to the corporation, but no
part of it ever was. The stockholding directors were so dis-
satisfied that they declared a dissolution of the corporation.

Proof was offered that Ruegg, Bosse & Co. at date of the
charter of the Missouri Spinning Company were hopelessly
insolvent; that they hawked around the subscription lists
with the assurance that the Phœnix Cotton Factory had
·made 20, 30, even 50 per cent., or, as they expressed it
"hand over fist."

The court refused to give the following instructions which
were asked by defendant, and to which due exception was
taken :

1. If the jury believe that $50,000 had not been in good
faith subscribed to the capital stock of the Missouri Spinning
Company at or before the organization of the company, then
the jury will find for the defendant.

2. The court instructs the jury, that, under the pleadings
of this case, the burden of proof is upon the plaintiff; and,
before the jury can find for the plaintiff, it is incumbent
upon him to disprove by satisfactory evidence the facts stated
in the answer of the garnishee, and unless he have done so
the jury will find accordingly.

3. The jury is instructed that the plaintiff herein stands
in the same position as the Missouri Spinning Company
would stand if it were plaintiff; if, therefore, the jury believe
from the evidence that the Missouri Spinning Company was
a fraudulent institution, and that fraud was practised upon
the garnishee herein by said Missouri Spinning Company, its
officers and agents, either in its organization or in obtaining

said subscription, then said fraud is as much to be weighed in favor of the garnishee herein as if said Missouri Spinning Company were plaintiff herein.

4. If the jury believe from the evidence that Ruegg, Bosse & Co., for the purpose of defrauding garnishee and others, obtained their subscriptions to the agreement read in evidence, whereby they agreed to take a certain amount of stock in the Missouri Spinning Company; that without said company being legally organized, said Ruegg, Bosse & Co. and others, as pretended directors of said company, fraudulently managed the affairs of said company with the intent to defraud said garnishee and others of the amount of their subscription, with the intent to apply and appropriate such amount to the benefit of Ruegg, Bosse & Co.; and that plaintiff in this case, or those under whom he claims, was party or privy to the fraud,—then the jury will find for the defendant.

5. The court instructs the jury that the sum of $50,000 should have been subscribed at least six days before the organization of the company.

At the instance of the plaintiff the following instructions were given, and to which defendant duly excepted:

1. The statements of Louis Bosse and Charles F. Blattau to other subscribers cannot affect the validity of the subscription of Bernard Heidecker, unless it appears from the evidence that they were made to him also.

2. If the jury believe from the evidence that Bernard Heidecker attended meetings of the stockholders of the Missouri Spinning Company, and acted and voted as a subscriber, or accepted an appointment as a committee of said subscribers, or voted to accept of the amended charter, or became a director under said amended charter, he cannot deny the legal organization of the company.

3. The judgment in favor of the plaintiff offered in evidence is a debt established against the Missouri Spinning Company, and that judgment cannot be impeached in this proceeding by attacking the validity of the notes or contract upon which it is founded; and it matters not, therefore,

whether the notes were obtained by fraud, or were otherwise without consideration.

The jury found for plaintiff.

*Garesché, Gottschalk,* and *E. T. Farish,* for appellant.

I. The subscription of the $50,000 was a condition precedent to the organization of the company — Charter of Mo. Spinning Co., Sess. Acts 1859, p. 295; R. C. 1855, p. 372, § 9.

II. The answer of a garnishee is evidence in his favor, and the burden of proof is on the plaintiff—Davis v. Knapp et al., 8 Mo. 657; McEvoy v. Lane et al., 9 Mo. 48. Where a party grounds his action on a negative averment, he must prove it—Greenl. Ev. § 78.

III. The 3d and 4th instructions refused to defendant should have been given, because the plaintiff stands in the place of the Missouri Spinning Company, and the garnishee is entitled to make the same defence as he could against the Company—Drake Attach. § 672; Webb v. Miller, 24 Miss. 638; Myers v. Baltzell, 37 Penn. 491; McGehee v. Walker, 15 Ala. 183; Reagan v. Pacific R.R., 21 Mo. 30,—and fraud vitiates every transaction.

IV. The exclusion of the declarations of Bosse and Blattau, unless made to Heidecker, was clearly erroneous. The proof of Gottschalk and Fisse is that they were subscribers on the same list as Heidecker. "What is said by those holding an instrument of writing at the time of soliciting or permitting persons to sign the instrument, is evidence of its contents"—Matthews v. Walker, 9 Mo. 705; City Bk. of Columbus, 22 Mo. 89.

V. The 3d instruction for plaintiff should not have been given; such acts would bind him only after knowledge. Until the new directors were chosen, the stockholders knew nothing of the fraud. As to waiver by the acceptance of a directorship, Atlantic Cotton Mills v. Abbott, 9 Cush. (Mass.) 423.

VI. The proof that the charter was fraudulently obtained by Ruegg, Bosse & Co. for the very purpose of fraud was improperly excluded; it was a private act, and therefore could be impugned if fraudulently obtained—2 Bl. Com. p. 346, Sharswood ed., and authorities of n. 1, p. 343-4; Boulton v. Bull, 2 H. Black, 475.

*Knox & Smith*, for respondent.

In the three instructions given on motion of garnishee, the court tells the jury, if certain facts exist, plaintiff cannot recover; those facts are the defence contained in the answer, and it makes no difference in what manner the garnishee receives the benefit of that law, so that he receives it. But it is presumed that the garnishee asks this instruction upon the strength of certain early decisions of this court upon that subject, which are to the effect that "the law presumes the answer of the garnishee to be true until the contrary be proven by the plaintiff"—8 Mo. 657. But plaintiff submits, that, although that decision was good law when it was made, it is not good now under existing statutes. Under the law of 1835, when the above decision was rendered, the first step taken was to file interrogatories; the 2d, defendant's answer; and 3d, plaintiff might deny the answer: and these were all the pleadings. The only pleading to be filed by the garnishee was his answer—R. C. 1835, p. 79, §§ 22, 24, 25. But under existing laws this is changed—R. C. 1855, pp. 258-9, §§ 65 to 69. If the only issues to be tried are those raised by the denial and reply, it is not easy to see what the answer has to do with the case.

Fagg, Judge, delivered the opinion of the court.

The following statement will be necessary to an understanding of the points presented by the record for the consideration of the court.

The respondent Smith, as trustee for various parties, had obtained a judgment in the St. Louis Circuit Court against the Missouri Spinning Company for a large amount; and

the execution having been returned *nulla bona*, an attachment issued against the rights and credits of the company. (See R. C. 1855, p. 377.) The appellant Heidecker was summoned as garnishee, and in his answer to the interrogatories filed admits that he subscribed four shares of stock in said company, each to be of the nominal value of fifty dollars." That afterwards he paid nothing; but further says that he " does not know whether he was legally bound, or is so now, to pay any part or the whole of said subscription,—and believes not, from what he is informed, for the reasons that said company never was legally organized; that the charter of said company has not the legal effect of making the stockholders liable; that the subscription of stock by the garnishee does, according to its terms, not create any liability on his part; that said subscription was obtained by fraud and false representations; and that said defendant was a fraudulent institution, and the subscriptions to its stock without consideration and void."

The plaintiff having denied the answer, and the reply thereto having been made by the garnishee, there was a trial upon the issues so made, which resulted in a verdict and judgment for the plaintiff; from which an appeal is taken to this court.

The errors principally complained of are the giving and refusing instructions, and the exclusion of testimony offered by the garnishee. The latter will be first disposed of.

Upon the trial, the appellant offered to prove that the charter of the company had been obtained by fraud, and the testimony was excluded by the court. This proceeding is said to be, "in effect, a suit by the defendant in the plaintiff's name against the garnishee" (Drake Attach. § 452, 3d ed.); and hence the rights and liabilities of the parties are not affected by the fact that the action is in the name of the plaintiff instead of the defendant.

" It cannot be shown in defence to the suit of a corporation that the plaintiff's charter was obtained by fraud; nor especially by a subscriber who accepted the charter and as-

sisted in putting it into operation"—Ang. & Ames on Corp., § 636, 8th ed., and the authorities there cited. There was abundant testimony at the trial to show that the garnishee participated in the business of the company; that he voted to accept an amendment to the charter; and that eight or nine months after it had organized and was doing business in its corporate name, he was chosen a director, and accepted the position. The garnishee was, therefore, most clearly estopped from denying the legal existence of the corporation, and the testimony was properly rejected.

It is urged by appellant's counsel that the first instruction given for the plaintiff, to the effect that the declarations of Bosse and Blattau, the parties who are charged with procuring the subscriptions of stock by false and fraudulent representations, unless made to the garnishee, could not affect him, was erroneous.

There is no pretence, except in his answer, that his subscription was procured by any such means, or that he had knowledge of such representations made to other parties at any time before the commencement of this proceeding against him. His conduct and connections with the company, and without any repudiation of its acts or authority, is sufficient, we think, to estop him not only from showing that the charter was fraudulently obtained, but to exclude any idea of fraud in procuring his subscription of stock. Indeed every question of fraud on the part of this company, or those connected with it, from its inception down to the period of its dissolution, may be dismissed with the general remark, that the garnishee was too prominently connected with the corporation to derive any advantage therefrom. But the record shows that in the declarations of law given at the instance of the plaintiff, the whole case, so far as it was affected by any consideration of fraud, was fairly presented to the jury, and in a light most favorable to the garnishee.

The remaining question is as to the legal effect of the garnishee's answer, and the ruling of the Circuit Court in reference thereto.

The proceeding by garnishment is somewhat summary in its character, and seeks to reach effects in the hands of a third person, and subject them to the payment of the defendant's debt. The garnishee is required to purge his conscience by an answer made under oath, both as to the question of his indebtedness to the defendant, and as to the possession or control of any property belonging to him. The appellant asked the court to instruct the jury, that "under the pleadings in this case the burden of proof is upon the plaintiff; and before the jury can find for the plaintiff, it is incumbent upon him to disprove by satisfactory evidence *the facts stated in the answer of the garnishee, and, unless he has done so, the jury will find accordingly.*" The theory of this instruction is, that the answer of the garnishee goes to the jury as evidence in the cause, and is to be taken as true until the contrary has been made to appear by affirmative proof on the part of the plaintiff. The law permits the judgment creditor, or party suing by attachment, and who avails himself of this proceeding, to occupy the same position that the defendant does as it respects his right of recovery against the garnishee. It has been said that the latter is not to be placed in a worse position than he would have been at the suit of the defendant; and with equal justice and propriety it might be said that he ought not to be permitted to occupy one more favorable. Some of the earlier decisions of this court have been referred to, viz.: Davis v. Knapp et al., 8 Mo. 657, and McEvoy v. Lane et al., 9 Mo. 48. In both of these cases the court held substantially that the answer of the garnishee must go the jury as evidence, and is to be taken as true until the contrary is shown by the plaintiff.

It should be observed that both of these decisions were made upon the law as it stood in the Revised Code of 1835. The issue between the plaintiff and garnishee, under that act, was made upon a denial simply of the answer, the latter being the only pleadings, so to speak, in the case. By the Code of 1855 the denial of the answer is required to state "specifically the grounds upon which a recovery is sought against

the garnishee; and the garnishee shall be entitled to a reply; and the issue or issues made up on the denial and reply shall be the sole issue or issues tried; and the issue or issues shall be tried as ordinary issues between plaintiff and defendant"—R. C. 1855, p. 258, § 69. Previous to the change in our system of practice, the answer of the garnishee being the only pleading in the cause that was required to be sworn to, it was placed upon somewhat the same footing that an answer to a bill in equity occupied. In some of the States the garnishee is still regarded in the light of a trustee, and the pleadings in such cases are made to conform to that general idea; but such is clearly not the case in this State.

It is true that it devolves upon the plaintiff to show affirmatively why the garnishee should be charged; but the answer cuts no greater figure in the trial than his answer to a petition would in a suit by the defendant seeking the same sort of recovery against him. There was no error in refusing the instruction.

The other judges concurring, the judgment of the court below will be affirmed.